# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| STACEY SNELLER, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C12-4113-MWB <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Stacey Sneller seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Sneller contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## *Background*

Sneller was born in 1964. AR 148. She completed high school and three and a half years of college over two different time periods. AR 32. She previously worked as a nurse assistant, kitchen helper and cook helper. AR 285. Sneller protectively filed for DIB and SSI on July 14, 2009, alleging disability beginning on February 5, 2005,[1] due to anxiety, depression, social disorder and atypical psychotic disorder. AR 192,

---

[1] Sneller later amended her onset date to December 29, 2007. AR 30.

196. Her claims were denied initially and on reconsideration. AR 64-67. Sneller requested a hearing before an Administrative Law Judge (ALJ). AR 89-90. On May 23, 2011, ALJ Ronald Lahners held a hearing, but cancelled and postponed it when he discovered the medical evidence was not up to date. AR 58-63. He held another hearing on October 18, 2011, during which Sneller and a vocational expert testified. AR 25-57.

On November 4, 2011, the ALJ issued a decision finding Sneller not disabled since December 9, 2007.[2] AR 10-18. Sneller sought review of this decision by the Appeals Council, which denied review on October 22, 2012. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On December 27, 2012, Sneller filed a complaint in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . .

---

[2] This seems to be an error. During the hearing, the ALJ explained Sneller could not have an alleged onset date before December 28, 2007, because that time period was covered by a previous application. He suggested amending the alleged onset date to December 29, 2007, and Sneller agreed. AR 30. Therefore, references to December 9, 2007, as the alleged onset date in the ALJ's decision should be properly read as December 29, 2007.

in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See*

*Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *Summary of ALJ's Decision*

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

(2) The claimant has not engaged in substantial gainful activity since December 9, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

(3) The claimant has the following severe impairments: anxiety and paranoia. (20 CFR 404.1520(c) and 416.920(c))

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and carry up to

5

20 pounds and 10 pounds frequently. She can sit and stand for up to 6 hours in an 8-hour workday. However, she would need the opportunity to alternate positions at least hourly. She can occasionally bend, stoop and kneel. She is moderately limited in the ability to interact with the general public, co-workers and supervisors. She would be moderately limited in the ability to complete work in a timely manner. Moderate is defined as imposes a problem but does not preclude satisfactory work. The work she is performing on her night shift would best fit within this residual functional capacity. Work such as a greeter at Wal-Mart would require too much social interaction.

(6) The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965)

(7) The claimant was born on July 28, 1964 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963)

(8) The claimant completed two years of college at Northwestern and one and a half years at a technical college and is able to communicate in English. (20 CFR 404.1564 and 416.964)

(9) The claimant has acquired skills from past relevant work. (20 CFR 404.1568 and 416.968)

(10) Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d))

(11) The claimant has not been under a disability, as defined in the Social Security Act, from December 9, 2007 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g))

AR 12-19.

At Step One, the ALJ noted that while Sneller had not engaged in substantial gainful activity since her alleged onset date, she had worked between 20 to 40 hours each week as a caretaker earning $8.50 per hour since August 21, 2009. AR 12. At Steps Two and Three, the ALJ found Sneller had severe impairments of anxiety and paranoia, but they did not meet or equal the severity of a listed impairment when considered singly and in combination. AR 12-13. Her impairments did not satisfy the "paragraph B" criteria of the relevant listings because they did not cause at least two "marked" limitations or one "marked' limitation and "repeated" episodes of decompensation, each of extended duration. AR 13. Rather, her impairments caused mild restriction to her activities of daily living, moderate difficulties with social functioning and moderate difficulties with concentration, persistence or pace. She also experienced no episodes of decompensation of extended duration. *Id*. The ALJ found there was also no evidence to support the presence of the "paragraph C" criteria. *Id*.

At Step Four, the ALJ analyzed Sneller's RFC. He found she was able to occasionally lift and carry up to 20 pounds and 10 pounds frequently. *Id*. She could sit and stand for up to 6 hours in an 8-hour workday, but would need to alternate positions hourly. She could occasionally bend, stoop and kneel. She had moderate limitations in the ability to maintain concentration for extended periods, interact with the general public, co-workers and supervisors and complete work in a timely manner. He defined moderate as "imposes a problem but does not preclude satisfactory work." *Id*. He noted that her current work as a caregiver on the night shift best fit within this RFC, but work such as a greeter at Wal-Mart would involve too much social interaction. *Id*.

In reaching this determination, the ALJ considered Sneller's testimony from the hearing, the medical evidence, medical opinions from her treating psychiatrist and consultative examiners and a work performance assessment from Sneller's current manager. The ALJ found Sneller was not a credible witness based on her work as a caregiver since August 21, 2009. AR 17. Although her hours varied at that job, the

ALJ noted it appeared that was due to the nature of the job rather than Sneller's inability to work full-time. He also noted there was little medical evidence in the record and that this evidence did not support a finding of disability. Finally, he remarked that Sneller's manager indicated Sneller was performing her part-time job successfully.

As for the medical opinions, the ALJ stated he did not give significant weight to opinions issued in August 2009 and March 2010 by Dr. William Fuller, Sneller's treating psychiatrist. *Id.* The ALJ found that the opinions were inconsistent with Dr. Fuller's progress notes, which indicated improvement and acknowledged Sneller's work activity. He also noted that Dr. Fuller had assigned Global Assessment of Functioning (GAF) scores ranging from 55 to 60, indicating the ability to work.[3]

Having determined Sneller's RFC, the ALJ concluded that she was unable to perform any of her past relevant work. AR 18. At Step Five, however, he found she could perform other work available in the national economy such as a laundry worker, cleaner and food preparer. For these reasons, the ALJ found Sneller had not been disabled since December 9, 2007. AR 19.

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The

---

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have

supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## *Discussion*

Sneller raises two issues in contending that the ALJ's decision is not supported by substantial evidence in the record as a whole:

    I.    The ALJ Erred In Discounting the Opinions of Dr. Fuller

    II.    The ALJ Erred In Finding Sneller Was Not Credible

*See* Doc. No. 13. I will address each of these issues separately, along with an additional issue that is apparent from my review of the record.

### A. *Did The ALJ Err In Discounting The Treating Physician's Opinions?*

Sneller argues the ALJ erred by relying on the opinions of one-time consultative examiners instead of Dr. Fuller's opinions who has treated Sneller for three years. The Commissioner argues the ALJ gave good reasons supported by substantial evidence for discounting Dr. Fuller's opinions. She also argues Sneller failed to point to any specific statements in Dr. Fuller's opinions that support her claim of disability.

A treating physician's opinion is given "controlling weight" as long as it is "well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is generally entitled to "substantial weight," but such an opinion does not "automatically control" because the ALJ must evaluate the record as a whole. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence

contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* at 1014 (internal quotations and citations omitted). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Id.* at 1013 (quoting 20 C.F.R. § 404.1527(c)(2)).

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). However, a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

Dr. Fuller submitted two opinions. The first was dated August 13, 2009, in which Dr. Fuller wrote that he has treated Sneller since 2006 for schizophrenia-schizo-affective type, bipolar type. AR 330. He then explained:

> The patient's functional abilities are dramatically influenced by her illness. She has trouble maintaining attention and concentration at task for long periods of time. She tends to get into conflicts and difficulties with supervisors. She has a lot of absences from both when she is manic and when she is depressed and becomes so phobic of leaving her own house that sometimes she will not show up for work because she is afraid to leave. The patient is intelligent and would be able to understand her functions and maintain her attention but her pace would definitely be slowed by distractions and psychiatric symptoms. It is important to note that she has

11

> Bipolar Disorder so she is quite different at different points in time. When she is on the manic side she becomes quite psychotic, delusional, has auditory hallucinations and becomes so symptomatic it would not be possible for her to work at all. When she is in the normal or neutral phase the symptoms that remain are anxiety symptoms, a strong agoraphobia and difficulty concentrating and focusing and auditory hallucinations continue even in the normal phase. When she is in the depressive phase she becomes slowed has low energy and often times does not leave her apartment again causing problems with attendance at work.
>
> In my opinion this patient has a severe mental illness and is definitely disabled from this illness. I believe that she is capable of handling benefits on her own behalf.

*Id*. Dr. Fuller's treatment notes indicate he saw Sneller every two to three months. AR 366-81. He provided a second opinion in March 2010. AR 363. With regard to her mental condition he wrote:

> 1. Stacey's ability to remember and understand instructions, procedures and locations is essentially unrestricted. 2. Her ability to carry out instructions, maintain attention, main [sic] concentration and pace are highly variable. When she's at her best she will not be able to withstand pressure from employers. With that she would experience excessive anxiety and wanting to exit the work place. When she is severely manic or depressed, she's not able to function at all. 3. Her ability to interact appropriately with supervisors—the patient once again can react appropriately at her euthymic times but not when she's manic or depressed. 5. This patient is capable of handling benefits in her own behalf.

*Id*.

The ALJ did not give Dr. Fuller's opinions controlling weight because he found they were not supported by his own treatment notes which indicated improvement and acknowledged Sneller's work activity. In his analysis of the medical evidence, the ALJ cited several of Dr. Fuller's treatment notes in which Dr. Fuller indicated that Sneller

12

had minimal depressive and anxiety symptoms, was doing relatively well, was enjoying her job at an assisted living facility working 20 hours per week, had dramatic improvement in her agoraphobia and social phobia symptoms, had occasional auditory hallucinations but no longer had delusional thinking and her psychotic symptoms were basically in good control as long as she was taking her medication. AR 15-17. The ALJ also cited the GAF scores Dr. Fuller assigned at appointments, which ranged from 55 to 60. *Id.*

In her reply, Sneller argues these are not good reasons to discredit the opinion of her treating physician because her impairment, by its nature, causes fluctuations in mood and behavior. *See* Doc. No. 17. She argues that Dr. Fuller's notations of symptom improvement and doing well at her job should not be used to discredit his opinions because there are also notations indicating her symptoms of agoraphobia and visual hallucinations had returned and she was isolating herself at home. Sneller argues these fluctuations are indicative of the impairment itself and evidence of "good days" does not necessarily mean she is capable of maintaining a full-time job.

While Sneller makes a valid point concerning the nature of her impairment, extreme fluctuations in her mood and behavior are rarely documented in Dr. Fuller's treatment notes. Sneller cites only two examples from Dr. Fuller's treatment notes, which do not support his assertion that Sneller is completely incapable of functioning when experiencing symptoms. The first is from July 15, 2009, when Sneller reported she had attempted to look for jobs and had become quite upset and agitated. AR 375. Dr. Fuller noted her symptoms of agoraphobia had returned, she was isolating herself at home, not cleaning the house or doing laundry and was doing "quite poorly" overall. *Id.* He also noted she was having some auditory hallucinations. *Id.* Sneller's second example is from June 23, 2010, when she reported experiencing a visual hallucination one day. AR 371. Dr. Fuller noted she had been very stressed the day before. *Id.*

The majority of Dr. Fuller's treatment notes over the course of three years demonstrate that Sneller experiences minimal symptoms. In October 2008, Sneller

13

reported she had been free of any auditory hallucinations and delusions for more than five years. AR 378. At her next appointment in January 2009, Dr. Fuller noted she had "minimal if any hallucinations" since he last saw her. AR 377. In April 2009, Dr. Fuller noted Sneller had not had significant depression, mania, psychotic symptoms or hallucinations and was enjoying day-to-day life. AR 376. In December 16, 2009, Sneller had found a job working 25 hours per week and reported that her life was going "relatively well." AR 374. Dr. Fuller noted that she was not having auditory hallucinations or depressive symptoms, but did experience some "residual background symptoms on a daily basis." *Id.* On March 17, 2010, he noted that she had "occasional auditory hallucinations" but noted her psychotic symptoms were basically in good control as long as she was taking her medication. AR 372. Sneller also reported she was enjoying her job as a caregiver working 20 hours a week. *Id.* By March 2011, Sneller was working 32 hours per week and had not reported any symptoms since her appointment on June 23, 2010. AR 368-71.

    I find the ALJ's reasons for not giving Dr. Fuller's opinions controlling weight are supported by substantial evidence in the record as a whole. Dr. Fuller opined that Sneller would be completely incapable of functioning when severely manic or depressed, but never mentioned manic symptoms and only observed Sneller in a depressive state once during his three years of treating her. Ironically, this seemed to correlate with her frustration from being unable to find a job and Sneller has reported very few symptoms since she began working a part-time job. While the ALJ did not give Dr. Fuller's opinions controlling weight, he did incorporate moderate limitations into Sneller's RFC, which are consistent with the GAF scores Dr. Fuller assigned. For these reasons, I find the ALJ did not err in failing to give Dr. Fuller's opinions controlling weight.

**B.     *Did the ALJ Err in Analyzing the Other Medical Opinions in the Record?***

Because the ALJ gave Dr. Fuller's opinions less than controlling weight, he was required to explain the weight he gave to the other medical opinions in the record. The regulations provide:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527, 416.927. The ALJ is not bound by the findings of state agency or other program physicians and psychologists, but he or she "may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6P, 1996 WL 374180 (July 2, 1996).

The ALJ did not assign a weight to any other medical opinions in the record besides Dr. Fuller's. He discussed the opinions of Dr. Price, who performed a consultative examination in 2004, and Dr. Morton, who performed a consultative examination in 2009. AR 15-16. However, he did not describe how he weighed those opinions and why. Additionally, the ALJ completely failed to discuss the opinion of the state agency consultant, although the limitations he identified in the RFC are nearly identical to the ones identified in the state agency consultant's mental RFC assessment and psychiatric review technique. AR 338-58.

The ALJ failed to follow the regulations by not explicitly identifying the weight he gave to other medical opinions in the record and providing reasons to support that weight. However, I find there is no need to remand this case so the ALJ can simply state what is obvious from his decision and the record. The limitations the ALJ included in Sneller's RFC are actually more limiting than those identified by the consultative examiners and are consistent with those identified by the state agency

consultant. AR 338-58. It is clear that the ALJ relied heavily on the opinion of the state agency consultant and found that other evidence supported a greater degree of limitation than provided in the consultative examiners' opinions. Because the ALJ adopted the most restrictive limitations that are supported by the record and still found Sneller not disabled, I find the ALJ's failure to assign a weight to the other medical opinions amounted to an "arguable deficiency in opinion-writing technique" which had no effect on the outcome. *See Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (stating the ALJ's decision should not be set aside based on an arguable deficiency in opinion-writing technique when it is unlikely that it affected the outcome). The ALJ's evaluation of the medical evidence is supported by substantial evidence in the record as a whole.

### C.   *Did The ALJ Err By Finding The Claimant Was Not Credible?*

Sneller also argues the ALJ did not provide good reasons for discrediting her subjective allegations because he based them on improper factors and they are not supported by substantial evidence. The Commissioner argues Sneller is essentially asking the court to reweigh the evidence, which is improper, and that the court should uphold the ALJ's credibility determination because he provided good reasons which are supported by substantial evidence in the record as a whole.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at

791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ acknowledged the *Polaski* factors by citing the relevant regulations and Social Security Ruling 96-7p. He found Sneller was not a credible witness to the extent that she alleged disability and the inability to perform all work activity. He reasoned that the limited amount of medical evidence in the record did not support a finding of disability. AR 17. He pointed out that Sneller had worked as a caregiver since August 21, 2009, and, while her hours varied, this seemed to be due to the nature of the job rather than her inability to work full-time due to her mental impairments. *Id.* He also discussed Dr. Fuller's treatment notes and stated the GAF scores he assigned indicated the ability to work. *Id.* Finally, the ALJ remarked that Sneller's manager had completed a work performance assessment on March 8, 2011, indicating Sneller was performing her job successfully. *Id.*

Sneller argues that the lack of medical evidence is not a good reason to discredit her because she has limited income and means to seek medical treatment. As for her work hours, she argues the ALJ has no evidence to support his statement that her hours seem to vary due to the nature of her job rather than her inability to work. Finally, she argues the positive job review from her manager does not prove she is able to work full-time as that review only reflects her ability to perform part-time work. For these reasons, Sneller argues the ALJ's credibility determination is not supported by substantial evidence in the record as a whole.

The Commissioner argues that the ALJ's reference to the sparse medical evidence was addressing not just the quantity of but also the substance of the medical records which failed to support her claim of disability. She also points out that the few treatment notes seem to be the result of Dr. Fuller's scheduling decisions rather than

17

financial reasons. As for her work hours, the Commissioner argues Sneller's own testimony supports the ALJ's reasoning that her hours varied due to the nature of the job rather than difficulties with her impairment. Finally, the Commissioner argues that the ALJ properly considered Sneller's manager's assessment in discrediting Sneller because it indicated Sneller's symptoms were not as severe as alleged. For these reasons, the Commissioner contends the ALJ provided good reasons for discrediting Sneller which are supported by substantial evidence in the record as a whole.

I find that the ALJ provided good reasons supported by substantial evidence in the record as a whole for discrediting Sneller's subjective allegations. The ALJ's first reason – the lack of medical evidence to support a finding of disability – is a proper factor to consider and is supported by substantial evidence. I agree with the Commissioner that the limited quantity of medical records likely resulted from Dr. Fuller's scheduling decisions, not Sneller's financial condition. At the end of each treatment note, he indicated that her next appointment was in three months. AR 368-81. He did not indicate that she should be seen with more frequency. I also agree that the ALJ's comment about little medical evidence supporting Sneller's allegations was directed primarily at the substance of that evidence, not the volume. As discussed earlier, this reason is supported by substantial evidence because very few medical records indicated Sneller was experiencing significant symptoms that interfered with her ability to work.

The ALJ's second reason for discrediting Sneller – her work activities – is also a proper credibility factor and is supported by substantial evidence in the record as a whole. Sneller has been working as a caregiver 20 to 40 hours each week since August 2009. AR 31. She testified she does not work 40 hours very often and usually only works that many hours if she has to fill in for someone. *Id.* She stated she can only work 40 hours at this job for a short period of time, but did not state why. *Id.* Earlier in the hearing she stated she could not hold a full-time job because her mental disorder kept her from functioning around a lot of people and a lot of pressure. AR 34. Later,

in discussing a previous nursing assistant job, she indicated she could not perform that job on a full-time basis because there was too much stress. AR 50-51. This testimony does not establish that Sneller is unable to perform any type of full-time work. Instead, it indicates that she needs a low-stress job with minimal interaction with others. The ALJ accounted for these limitations in his RFC determination, which are supported by substantial evidence in the record.

The ALJ's final reason for discrediting Sneller – the positive work assessment from her manager – was also a proper credibility factor and is supported by substantial evidence in the record. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (providing that the ALJ may consider evidence from non-medical sources that addresses the severity of a claimant's impairment and how it affects his or her ability to work). In her assessment, Sneller's manager indicated that Sneller had difficulty adapting to changes in the workplace and sometimes had difficulty completing a task in the way she felt it should be completed, but she was able to understand and remember short and simple instructions, locations and work procedures. AR 281-82. She could also carry out short and simple instructions and sustain a routine with ordinary supervision. She had no difficulty relating appropriately to supervision and would ask for assistance if she did not understand a new task or how to perform it. The manager also noted that Sneller was able to make simple work-related decisions and plans and could maintain safe behavior by being aware of normal hazards. Finally, she indicated she was satisfied with Sneller's performance and would employ or rehire her on a full-time basis. *Id*. It was not error for the ALJ to consider this assessment in weighing Sneller's credibility even though the assessment only reflected her abilities in performing part-time work. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The ALJ provided good reasons that are supported by substantial evidence in the record as a whole for discrediting Sneller's subjective allegations. Therefore, I must

defer to his credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

*Conclusion and Recommendation*

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **affirmed** and judgment be entered against Sneller and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 7th day of November, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE