# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| STACEY L. SNELLER,<br><br>Plaintiff,<br>vs.<br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. C 12-4113-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION** |

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION..................................................................................2*
  *A.   Procedural Background ................................................................2*
  *B.   ALJ's Determinations...................................................................3*
  *C.   Judge Strand's R&R ....................................................................6*

*II.  ANALYSIS ........................................................................................7*
  *A.   Standard of Review.....................................................................7*
  *B.   Discussion ............................................................................... 12*
     *1.   Discounting Dr. Fuller's Opinions..................................... 13*
     *2.   Discounting Sneller's Credibility ....................................... 18*

*III. CONCLUSION ................................................................................ 20*

This case is before me on a Report and Recommendation (R&R) from Magistrate Judge Leonard Strand, entered on November 7, 2013 (docket no. 19). In the R&R, Judge Strand recommends that I affirm a decision by the Commissioner of Social Security (the Commissioner) denying plaintiff Stacey Sneller (Sneller) disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. Sneller timely filed objections to the R&R (docket no. 20), which the Commissioner opposes

(docket no. 21). For the reasons discussed below, I adopt the recommendations in the R&R and affirm the Commissioner's decision to deny Sneller benefits.

## I. INTRODUCTION

### A. Procedural Background

Judge Strand summarized this case's procedural background as follows:

> Sneller protectively filed for DIB and SSI on July 14, 2009, alleging disability beginning on February 5, 2005,[1] due to anxiety, depression, social disorder and atypical psychotic disorder. AR 192, 196. Her claims were denied initially and on reconsideration. AR 64-67. Sneller requested a hearing before an Administrative Law Judge (ALJ). AR 89-90. On May 23, 2011, ALJ Ronald Lahners held a hearing, but cancelled and postponed it when he discovered the medical evidence was not up to date. AR 58-63. He held another hearing on October 18, 2011, during which Sneller and a vocational expert testified. AR 25-57.
>
> On November 4, 2011, the ALJ issued a decision finding Sneller not disabled since December 9, 2007.[2] AR 10-18. Sneller sought review of this decision by the Appeals Council, which denied review on October 22, 2012. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

(Docket no. 19, at 1-2). On December 27, 2012, Sneller filed a complaint in federal court, seeking judicial review of the Commissioner's decision.

---

[1] Sneller later amended her onset date to December 29, 2007. AR 30.
[2] The ALJ noted in his opinion that Sneller amended her onset date to December 9, 2007. AR 10. This appears to be a typo, as the transcript of Sneller's hearing reveals that she amended her onset date to December 29, 2007. AR 30.

## B. *ALJ's Determinations*

Judge Strand thoroughly summarized the ALJ's determinations regarding Sneller's alleged disability. "[Sneller] does not object to [this] background information" (docket no. 20, at 5). Thus, I adopt Judge Strand's summary of the ALJ's determination, which is set forth below.

> The ALJ made the following findings:
>
> > (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
> >
> > (2) The claimant has not engaged in substantial gainful activity since December 9, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)
> >
> > (3) The claimant has the following severe impairments: anxiety and paranoia. (20 CFR 404.1520(c) and 416.920(c))
> >
> > (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)
> >
> > (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and carry up to 20 pounds and 10 pounds frequently. She can sit and stand for up to 6 hours in an 8-hour workday. However, she would need the opportunity to alternate positions at least hourly. She can occasionally bend, stoop and kneel. She is moderately limited in the ability to interact with the general public, co-workers and supervisors. She would be moderately limited in the ability to complete

work in a timely manner. Moderate is defined as imposes a problem but does not preclude satisfactory work. The work she is performing on her night shift would best fit within this residual functional capacity. Work such as a greeter at Wal-Mart would require too much social interaction.

(6) The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965)

(7) The claimant was born on July 28, 1964 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963)

(8) The claimant completed two years of college at Northwestern and one and a half years at a technical college and is able to communicate in English. (20 CFR 404.1564 and 416.964)

(9) The claimant has acquired skills from past relevant work. (20 CFR 404.1568 and 416.968)

(10) Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d))

(11) The claimant has not been under a disability, as defined in the Social Security Act, from December 9, 2007 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g))

AR 12-19.

At Step One, the ALJ noted that while Sneller had not engaged in substantial gainful activity since her alleged onset date, she had worked between 20 to 40 hours each week as a caretaker earning $8.50 per hour since August 21, 2009.

4

AR 12. At Steps Two and Three, the ALJ found Sneller had severe impairments of anxiety and paranoia, but they did not meet or equal the severity of a listed impairment when considered singly and in combination. AR 12-13. Her impairments did not satisfy the "paragraph B" criteria of the relevant listings because they did not cause at least two "marked" limitations or one "marked' limitation and "repeated" episodes of decompensation, each of extended duration. AR 13. Rather, her impairments caused mild restriction to her activities of daily living, moderate difficulties with social functioning and moderate difficulties with concentration, persistence or pace. She also experienced no episodes of decompensation of extended duration. *Id*. The ALJ found there was also no evidence to support the presence of the "paragraph C" criteria. *Id*.

At Step Four, the ALJ analyzed Sneller's RFC. He found she was able to occasionally lift and carry up to 20 pounds and 10 pounds frequently. *Id*. She could sit and stand for up to 6 hours in an 8-hour workday, but would need to alternate positions hourly. She could occasionally bend, stoop and kneel. She had moderate limitations in the ability to maintain concentration for extended periods, interact with the general public, co-workers and supervisors and complete work in a timely manner. He defined moderate as "imposes a problem but does not preclude satisfactory work." *Id*. He noted that her current work as a caregiver on the night shift best fit within this RFC, but work such as a greeter at Wal-Mart would involve too much social interaction. *Id*.

In reaching this determination, the ALJ considered Sneller's testimony from the hearing, the medical evidence, medical opinions from her treating psychiatrist and consultative examiners and a work performance assessment from Sneller's current manager. The ALJ found Sneller was not a credible witness based on her work as a caregiver since August 21, 2009. AR 17. Although her hours varied at that job, the ALJ noted it appeared that was due to the nature of the job rather than Sneller's inability to work full-

time. He also noted there was little medical evidence in the record and that this evidence did not support a finding of disability. Finally, he remarked that Sneller's manager indicated Sneller was performing her part-time job successfully.

As for the medical opinions, the ALJ stated he did not give significant weight to opinions issued in August 2009 and March 2010 by Dr. William Fuller, Sneller's treating psychiatrist. *Id.* The ALJ found that the opinions were inconsistent with Dr. Fuller's progress notes, which indicated improvement and acknowledged Sneller's work activity. He also noted that Dr. Fuller had assigned Global Assessment of Functioning (GAF) scores ranging from 55 to 60, indicating the ability to work.[3]

Having determined Sneller's RFC, the ALJ concluded that she was unable to perform any of her past relevant work. AR 18. At Step Five, however, he found she could perform other work available in the national economy such as a laundry worker, cleaner and food preparer. For these reasons, the ALJ found Sneller had not been disabled since December 9, 2007. AR 19.

(Docket no. 19, at 5-8).

### C. *Judge Strand's R&R*

In the R&R, Judge Strand found that the ALJ's decision denying Sneller benefits was supported by substantial evidence in the record (docket no. 19, at 14, 18). In particular, Judge Strand rejected two arguments raised by Sneller: (1) that the ALJ

---

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

6

erred in discounting the opinions of Dr. Fuller, Sneller's treating physician, and (2) that the ALJ erred in discounting Sneller's credibility. Judge Strand found that "the ALJ's reasons for not giving Dr. Fuller's opinions controlling weight are supported by substantial evidence in the record as a whole" (docket no. 19, at 14), and that "[t]he ALJ provided good reasons . . . for discrediting Sneller's subjective allegations" (docket no. 19, at 19). I will discuss Judge Strand's reasoning in more detail below as it becomes relevant to Sneller's objections.

## II.    ANALYSIS

### A.    *Standard of Review*

I review Judge Strand's R&R under the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28. U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

7

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's *required de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask."). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this

8

"specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise. *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear

error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). The United States Supreme Court has stated that the "foremost" principle under the "clearly erroneous" standard of review "is that '[a] finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; see also Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a

clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[4]

---

[4] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the

(Footnote continued . . .

Here, Sneller has objected to some of Judge Strand's findings. Although I will review these findings *de novo*, and Judge Strand's other findings for clear error, I review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." (quoting *Haggard*, 175 F.3d at 594)). "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

### B. *Discussion*

Sneller raises two objections to Judge Strand's R&R, which mirror the arguments Sneller raised before Judge Strand. First, Sneller objects to the portion of

---

magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

the R&R upholding the ALJ's decision to discount Dr. Fuller's opinions. Second, Sneller objects to the portion of the R&R affirming the ALJ's decision to discount Sneller's credibility. I will address each of these objections in turn.

### 1. *Discounting Dr. Fuller's Opinions*

Sneller objects to Judge Strand's findings upholding the ALJ's decision to discount the opinions of Dr. Fuller, Sneller's treating physician, who provided two opinion letters supporting Sneller's claim for disability benefits. Ordinarily, a treating physician's opinion is given controlling weight, but a treating physician's opinion is not "inherently entitled" to such weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Rather, the ALJ must review a treating physician's opinion in light of all the record evidence. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999). "[A]n ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000); *see also Hacker*, 459 F.3d at 937 ("A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions."). In cases where the ALJ does not afford a treating physician's opinion controlling weight, the ALJ must provide "good reasons" for discounting the treating physician's opinion. *Prosch*, 201 F.3d at 1013; *see also* 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ provided many reasons for discounting Dr. Fuller's opinions, which Judge Strand accurately summarized:

> The ALJ did not give Dr. Fuller's opinions controlling weight because he found they were not supported by his own treatment notes which indicated improvement and acknowledged Sneller's work activity. In his analysis of the medical evidence, the ALJ cited several of Dr. Fuller's treatment notes in which Dr. Fuller indicated that Sneller had minimal depressive and anxiety symptoms, was doing

13

> relatively well, was enjoying her job at an assisted living facility working 20 hours per week, had dramatic improvement in her agoraphobia and social phobia symptoms, had occasional auditory hallucinations but no longer had delusional thinking and her psychotic symptoms were basically in good control as long as she was taking her medication. AR 15-17. The ALJ also cited the GAF scores Dr. Fuller assigned at appointments, which ranged from 55 to 60. *Id.*

(Docket no. 19, at 12-13).

Sneller argues that substantial evidence does not support the ALJ's reasoning. In particular, Sneller cites to several treatment notes in the record that, according to Sneller, demonstrate that her mental health would "wax and wane, consistent with her diagnosed conditions" (docket no. 20, at 6). Based on these notes, Sneller claims that "Dr. Fuller's records, when reviewed as a whole, support [his] conclusions" (docket no. 20, at 5), that "Dr. Fuller's records are not inconsistent with [his] opinions" (docket no. 20, at 6), and that "there are several examples in the record which indicate . . . [Sneller] was never totally free of . . . her mental health disorders" (docket no. 20, at 7). These claims expose the flawed reasoning behind Sneller's argument. Even if Sneller's claims are true, they merely demonstrate that the record contains some evidence that could support a conclusion other than the one the ALJ reached. But, the question here is not whether the ALJ could have reached a different conclusion; the question is whether substantial evidence supports the ALJ's conclusion. *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996). The record may well provide substantial evidence supporting two, conflicting conclusions. *Id.* at 416-17. It is the ALJ's prerogative—not mine—to weigh the evidence and choose among those conclusions. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). I must uphold the ALJ's decision if it is backed by substantial evidence, even if I would have reached a different conclusion. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

I agree with Judge Strand that substantial evidence supports the ALJ's decision to discount Dr. Fuller's opinion. In the R&R, Judge Strand highlighted the evidence conflicting with Dr. Fuller's opinions, and supporting the ALJ's decision:

> The majority of Dr. Fuller's treatment notes over the course of three years demonstrate that Sneller experiences minimal symptoms. In October 2008, Sneller reported she had been free of any auditory hallucinations and delusions for more than five years. AR 378. At her next appointment in January 2009, Dr. Fuller noted she had "minimal if any hallucinations" since he last saw her. AR 377. In April 2009, Dr. Fuller noted Sneller had not had significant depression, mania, psychotic symptoms or hallucinations and was enjoying day-to-day life. AR 376. In December 16, 2009, Sneller had found a job working 25 hours per week and reported that her life was going "relatively well." AR 374. Dr. Fuller noted that she was not having auditory hallucinations or depressive symptoms, but did experience some "residual background symptoms on a daily basis." *Id.* On March 17, 2010, he noted that she had "occasional auditory hallucinations" but noted her psychotic symptoms were basically in good control as long as she was taking her medication. AR 372. Sneller also reported she was enjoying her job as a caregiver working 20 hours a week. *Id.* By March 2011, Sneller was working 32 hours per week and had not reported any symptoms since her appointment on June 23, 2010. AR 368-71.

(Docket no. 19, at 13-14).

Sneller does not directly address any of these reasons supporting the ALJ's decision to discount Dr. Fuller's opinions. Instead, she argues that "[t]he ALJ's decision, and the Report and Recommendation, inadequately examine the effects of [Sneller's] bipolar disorder" (docket no. 20, at 7). Sneller cites two opinions from the Seventh Circuit Court of Appeals noting that a bipolar claimant may still be disabled even if she has responded well to treatment. *See Scott v. Astrue*, 647 F.3d 734, 740

(7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (noting that a claimant's normal behavior during office visits did not contradict the claim that her bipolar disorder was severe because "bipolar disorder is episodic").

In *Scott v. Astrue*, 647 F.3d at 739, the Seventh Circuit Court of Appeals held that an ALJ was too quick to discount a treating physician based on an alleged inconsistency between the physician's opinion that a bipolar claimant was "markedly limited in her ability to work" and the physician's notes, which stated that the claimant "had responded well to treatment." These statements were not contradictory because they were consistent with "[t]he very nature of bipolar disorder," which produces fluctuations in patients' symptoms. *Id*. at 740. The claimant's records in *Scott* also showed that "she . . . continued to frequently experience bouts of crying and feelings of paranoia." *Id*. Based on these facts, the court held that the ALJ could not "cherry-pick" from the claimant's records showing she responded well to treatment in order to deny the claimant benefits. *Id*. (citations omitted). Similarly, in *Kangail v. Barnhart*, 454 F.3d at 629, the Seventh Circuit Court of Appeals held that an ALJ incorrectly concluded that "medical witnesses had contradicted themselves when they said [a claimant's] mental illness was severe yet observed that she was behaving pretty normally during her office visits." The ALJ also incorrectly downplayed evidence of "the [claimant's] inability to hold a job" where the claimant had "held a total of 10 jobs during . . . three years . . . ." *Id*. at 630. The court noted that the normal office visits and inability to hold a job were consistent with the episodic nature of the claimant's bipolar disorder. *Id*. at 629-30.

Neither *Scott* nor *Kangail* compels remand here. Unlike the ALJs in *Scott* and *Kangail*, the ALJ in this case did not discount Dr. Fuller's opinions based on Sneller's behavior during office visits or cherry-picked notes that Sneller "responded well to treatment." Rather, the ALJ's decision to discount Dr. Fuller was based on the fact that the *majority* of Dr. Fuller's records reflected that Sneller experienced minimal symptoms, was enjoying day-to-day life, and was working as a caregiver 20 to 32 hours per week for years. In fact, as Judge Strand noted, "Sneller has reported very few symptoms since she began working a part-time job" (docket no. 19, at 14). Even in her objections, Sneller cites only two records from July 15, 2009, and June 23, 2010, evidencing extreme fluctuations in her symptoms. Sneller's relatively infrequent symptoms, together with her relatively lengthy part-time work history, stand in contrast to the evidence in *Scott* describing the claimant's frequent bouts of crying and paranoia, and the evidence in *Kangail* describing the claimant's inability to hold a job. Moreover, Sneller cites no authority suggesting that bipolar disorder's episodic nature is alone enough to reverse an ALJ's denial of benefits. If that were the case, an ALJ could never deny benefits to a bipolar claimant—a result the law does not support.

Sneller also argues that "the ALJ erred in the present case by failing to analyze Dr. Fuller's qualifications and history with Sneller before disregarding his opinion that she was disabled" (docket no. 20, at 9). While the ALJ did not explicitly analyze Dr. Fuller's qualifications, the ALJ clearly understood that Dr. Fuller was "the claimant's psychiatrist," AR 16, and recited a detailed history of Dr. Fuller's treatment with Sneller, AR 14-17. Because the ALJ had sufficient reasons to discount Dr. Fuller, the ALJ's failure to further analyze Dr. Fuller's qualifications and history with Sneller is, at most, "an arguable deficiency in opinion-writing technique" that did not affect the outcome of the ALJ's decision, and therefore does not require remand. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (internal quotation marks omitted).

Finally, in a single sentence, Sneller argues that "the ALJ drew upon his inferences from Dr. Fuller's medical records instead of developing the record, which also warrants reversal" (docket no. 20, at 9). Sneller cites *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), in support of this argument. *Nevland* compels remand in some cases in which an ALJ determines a claimant's RFC without the benefit of medical evidence from an examining source. *Id.* That issue did not arise here because the ALJ had medical evidence from a treating source, Dr. Fuller. The ALJ simply discounted that evidence for the reasons discussed above. Thus, *Nevland* does not compel remand in this case.

In light of the evidence discussed above, I find that substantial evidence supports the ALJ's decision to discount Dr. Fuller's opinions. Sneller's first objection is therefore unavailing.

### 2. *Discounting Sneller's Credibility*

Sneller also objects to the portion of the R&R upholding the ALJ's decision to discount Sneller's credibility regarding her subjective complaints. But, Sneller objects to this portion of the R&R "for the same reasons set forth above [in her first objection]—the ALJ's failure to give Dr. Fuller's opinions appropriate weight led to the finding by the ALJ that Sneller's testimony about her mental health condition was not supported by the record" (docket no. 20, at 9). Sneller's second objection depends entirely on her first objection. Because Sneller's first objection fails, so too must her second.

Moreover, Sneller fails to address two independent reasons the ALJ provided for discounting Sneller's credibility—her work history and positive review from her manager. Judge Strand properly accounted for these reasons in upholding the ALJ's decision:

The ALJ's second reason for discrediting Sneller – her work activities – is also a proper credibility factor and is supported by substantial evidence in the record as a whole. Sneller has been working as a caregiver 20 to 40 hours each week since August 2009. AR 31. She testified she does not work 40 hours very often and usually only works that many hours if she has to fill in for someone. *Id.* She stated she can only work 40 hours at this job for a short period of time, but did not state why. *Id.* Earlier in the hearing she stated she could not hold a full-time job because her mental disorder kept her from functioning around a lot of people and a lot of pressure. AR 34. Later, in discussing a previous nursing assistant job, she indicated she could not perform that job on a full-time basis because there was too much stress. AR 50-51. This testimony does not establish that Sneller is unable to perform any type of full-time work. Instead, it indicates that she needs a low-stress job with minimal interaction with others. The ALJ accounted for these limitations in his RFC determination, which are supported by substantial evidence in the record.

The ALJ's final reason for discrediting Sneller – the positive work assessment from her manager – was also a proper credibility factor and is supported by substantial evidence in the record. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (providing that the ALJ may consider evidence from non-medical sources that addresses the severity of a claimant's impairment and how it affects his or her ability to work). In her assessment, Sneller's manager indicated that Sneller had difficulty adapting to changes in the workplace and sometimes had difficulty completing a task in the way she felt it should be completed, but she was able to understand and remember short and simple instructions, locations and work procedures. AR 281-82. She could also carry out short and simple instructions and sustain a routine with ordinary supervision. She had no difficulty relating appropriately to supervision and would ask for assistance if she did not understand a new task or how to perform it. The manager also noted that Sneller was able to make simple

work-related decisions and plans and could maintain safe behavior by being aware of normal hazards. Finally, she indicated she was satisfied with Sneller's performance and would employ or rehire her on a full-time basis. *Id.* It was not error for the ALJ to consider this assessment in weighing Sneller's credibility even though the assessment only reflected her abilities in performing part-time work. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

(Docket no. 19, at 18-19). Based on the forgoing, the ALJ had good reasons for discounting Sneller's credibility. Sneller's second objection is, therefore, also unavailing.

### III.  CONCLUSION

Because substantial evidence supported the ALJ's decisions to discount Dr. Fuller's opinions and to discount Sneller's credibility, I adopt the recommendations in the R&R. The Commissioner's decision denying Sneller benefits is affirmed. The Clerk shall enter judgment in favor of the Commissioner and against Sneller.

**IT IS SO ORDERED**.

**DATED** this 5th day of March, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA